**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | |
| **Plaintiff,** | **CIVIL ACTION NO.** |
| **v.** | **JURY TRIAL DEMAND** |
| **SURESTE PROPERTY GROUP, LLC,** **SURESTE PROPERTY SERVICES, LLC,** **and** **SURESTE DEVELOPMENT, LLC,** | |
| **Defendants.** | |

## <u>COMPLAINT</u>

This is an action under Title I of the Civil Rights Act of 1991 and Title VII of the Civil Rights Act of 1964, as amended ("Title VII") to correct unlawful employment practices and to provide appropriate relief to John Nizer ("Nizer"), who was adversely affected by the unlawful employment practices. The Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Defendants Sureste Property Group, LLC ("Sureste Property Group"), Sureste Property Services, LLC ("Sureste Property Services") and Sureste Development, LLC ("Sureste Development") (collectively "Defendants") violated Title VII when they terminated Nizer because of his race.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized pursuant to: Sections 706(f)(1) and (3) of Title VII, 42, U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division.

## PARTIES

3.      Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of both Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), 42 U.S.C. § 2000e-6.

4.      Sureste Property Group is a corporation organized under the laws of the State of Delaware, with its principal place of business in Atlanta, Georgia.  At all times relevant to this lawsuit, Sureste Property Group conduced business in the State of Georgia through the management and control of its subsidiaries, which include Sureste Development and Sureste Property Services.

5.      Sureste Development is a corporation organized under the laws of the State of Delaware, with its principal place of business in Atlanta, Georgia.  At all

times relevant to this lawsuit, Sureste Development conducted business in the State of Georgia and its Atlanta office.

6. Sureste Property Services is a corporation organized under the laws of the State of Delaware, with its principal place of business in Atlanta, Georgia. At all times relevant to this lawsuit, Sureste Property Services conducted business in the State of Georgia and its Atlanta office.

7. At all relevant times, Sureste Property Group was the parent company of Sureste Property Services and Sureste Development.

8. At all relevant times, Sureste Property Services and Sureste Development operated as divisions of Sureste Property Group.

9. At all relevant times, Defendants operated out of the same office located at 3475 Lenox Road, Suite 705, Atlanta, Georgia 30305.

10. At all relevant times, the Presidents of Sureste Property Services and Sureste Development directly reported to the Chief Executive Officer of Sureste Property Group.

11. At all relevant times, Sureste Property Group provided the same employee handbook and policies to, and implemented the same employment practices and procedures for, all employees of Sureste Development and Sureste Property Services.

12. Nizer was subject to Sureste Property Group's employee policies.

13.    Employees of Sureste Property Group, Sureste Development, and Sureste Property Services facilitated and participated in Nizer's discriminatory termination.

14.    Defendants are so integrated with respect to ownership and operations as to constitute a single or integrated enterprise for purposes of Title VII.

15.    Alternatively, Defendants each exercised sufficient control over the terms and conditions of Nizer's employment as to constitute Nizer's joint employers for purposes of Title VII.

16.    At all relevant times, Defendants have continuously maintained at least 15 employees, both individually and collectively.

17.    At all relevant times, Defendants have continuously been employers engaged in an industry affecting commerce within the meaning of sections 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h).

## **ADMINISTRATIVE PROCEDURES**

18.    More than thirty days prior to the institution of this lawsuit, Nizer filed a Charge of Discrimination with the Commission alleging violations of Title VII by Defendants.

19.    Defendants share an identity of interest.

20.    On September 12, 2023, the Commission issued a Letter of Determination finding reasonable cause to believe that Defendants violated Title VII

and inviting Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

21.    On November 14, 2023, the Commission issued to Defendants a Notice of Failure of Conciliation advising Defendants that the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

22.    All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

23.    Since at least June 2022, Defendants have engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e-2 by terminating Nizer because of his race.

24.    Defendants are a real estate operating company and asset management firm, which among other things, develop multifamily properties.

25.    In or about November 2021, Defendants hired Nizer to work as a project development manager in the Sureste Development division.

26.    Nizer is an African American male.

27.    Upon information and belief, Nizer was the first African American project development manager for Defendants.

28.    At the time of hire, Nizer was a college graduate and had a Master of

Business Administration degree.

29.    Prior to his employment with Defendants, Nizer worked as a commercial real estate specialist for over eight years and as a real estate developer for over five years.

30.    During his employment with Defendants, Nizer was paid by, and received health insurance through, Sureste Property Services.

31.    At all relevant times, Sureste Property Services administered the same time and attendance policies that governed the employment of all individuals employed by Sureste Property Group and its subsidiaries, including Nizer.

32.    In the time and attendance portion of Nizer's employee handbook—the same one provided to all individuals employed by Sureste Property Group and its subsidiaries—it refers to Sureste Property Services as "the Company."

33.    During his employment with Defendants, Nizer's job responsibilities included the following: conducting market research into areas such as rent and sales comparables, project area demographics, key employment centers, and schools; preparing due diligence checklists, investment memoranda, project schedules and budgets; making recommendations concerning project scope; managing vendors and consultants; driving design development; coordinating loan and land acquisition closings; overseeing construction; and generally ensuring the timely progress of the development.

34.     During Nizer's tenure, he was the only African American employee in his department.

35.     During Nizer's employment, Defendants employed one other project development manager, a white female.

36.     During Nizer's tenure, Defendants paid the white project development manager a higher salary than Nizer, despite that she was less experienced.

37.     During Nizer's tenure, Defendants assigned Nizer a significantly heavier workload than the white project development manager.

38.     During Nizer's tenure, Defendants assigned Nizer eight projects, each of which was active and ongoing.

39.     By contrast, Defendants assigned the white project development manager five projects during that same period, only two of which were active.

40.     Nizer's job responsibilities often forced him to work late and on weekends, while the white project development manager rarely—if ever—worked late or on weekends.

41.     Despite his heavy workload, Nizer performed well and progressed well in his role.

42.     Despite carrying a heavier workload, Nizer performed as well—and often better—than the white project development manager.

43.     In or about early-June 2022, Defendants' Chief Executive Officer

directed Nizer's supervisor, the President of Sureste Development, to terminate Nizer's employment, effective immediately.

44.     As grounds for the termination, the CEO told Nizer's supervisor that Nizer was "lazy."

45.     The CEO also stated that he was eliminating Nizer's position.

46.     At the time, the CEO had not received any information indicating that Nizer was performing poorly.

47.     At Nizer's supervisor's insistence, the CEO agreed to re-hire Nizer on a contract basis for approximately five weeks following his termination.

48.     On or about June 10, 2022, Nizer's supervisor informed Nizer of his termination.

49.     During the termination meeting, Nizer's supervisor told Nizer that he was being terminated for performance issues and because he did not fit "the company culture."

50.     Nizer's supervisor then offered Nizer the opportunity to continue working for Defendants on a contract basis from on or about June 13, 2022, to on or about July 15, 2022.

51.     Nizer accepted the offer to continue working for Defendants through July 15, 2022.

52.     Defendants subsequently issued Nizer a separation notice, which

showed the shifting reason of "role elimination" as the reason for his termination.

53.   Nizer then worked for Defendants from June 13, 2022, through July 15, 2022.

54.   After Nizer's termination, the white project development manager continued her employment with Defendants as project development manager.

55.   On or about July 11, 2022, Defendants promoted another white female employee with no college degree and no experience in project development to Nizer's former position of project development manager. Nizer's replacement had worked for Defendants for four months as a marketing manager prior to her promotion.

56.   With the promotion, the unqualified white female employee received a $20,000 raise, along with a 20% yearly bonus.

57.   During Nizer's replacement's tenure as project development manager, she performed the job responsibilities of a project development manager.

58.   Nizer's replacement performed poorly in her role as project development manager.

59.   Historically, Defendants have not afforded African American employees the same employment opportunities as white employees.

60.   Upon information and belief, Defendants failed to promote qualified African American employees.

61.   Upon information and belief, Defendants have never hired an African American individual for a senior leadership position.

62.   Upon information and belief, Defendants' CEO has acted more condescending and critical towards African American employees than white employees.

63.   Defendants' proffered reasons for Nizer's termination are pretext for unlawful race discrimination.

## STATEMENT OF CLAIMS

### *Race Discrimination*

64.   The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 63 as if fully asserted herein.

65.   Nizer, who is African American, was a member of a protected class.

66.   At all times relevant to the complaint, Nizer was qualified for the position of project development manager with Defendants.

67.   Nizer performed well while he was employed by Defendants as project development manager.

68.   Nizer was more experienced than his white counterpart, but Defendants paid him less than they paid his white counterpart.

69.   During his tenure, Nizer received a significantly heavier workload than his white counterpart, but despite this, he performed as well or better than she

performed.

70.    Defendants subjected Nizer to an adverse employment action by terminating his employment on or about June 10, 2022.

71.    Defendants did not terminate the employment of Nizer's white counterpart.

72.    On or about July 11, 2022, Defendants replaced Nizer with a less-qualified white employee.

73.    Defendants' proffered non-discriminatory reasons for terminating Nizer's employment are false and pretextual.

74.    The unlawful employment practices complained of above have deprived Nizer of equal employment opportunities and have otherwise adversely affected his status as an employee because of his race.

75.    Defendants exercised control over the fundamental aspects of the employment relationship giving rise to these claims.

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, successors, assigns and all persons in active concert or participation with Defendants, from engaging in employment practices

that discriminate against employees based on their race under Title VII.

B.     Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for African American employees and which eradicate the effects of past and present unlawful employment practices.

C.     Order Defendants to make Nizer whole, by providing appropriate back pay in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices.

D.     Order Defendants to make Nizer whole, by providing appropriate front pay in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices.

E.     Order Defendants to make Nizer whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

F.     Order Defendants to make Nizer whole, by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including inconvenience, emotional pain and suffering, anxiety, stress, depression, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

G.     Order Defendants to pay punitive damages for its malicious and

reckless conduct described above, in amounts to be determined at trial.

H.      Grant such further relief as the Court deems necessary and proper in the public interest.

I.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted,

KARLA GILBRIDE
General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

MARCUS G. KEEGAN
Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Assistant Regional Attorney

ROBYN M. FLEGAL
Supervisory Trial Attorney

*/s/ Matthew D. O'Brien*
Matthew D. O'Brien
Trial Attorney
Georgia Bar No. 825255
U.S. Equal Employment Opportunity
Commission
Atlanta District Office
100 Alabama St. SW, Suite 4R30

matthew.obrien@eeoc.gov
Telephone: 470-531-4776
Facsimile: 404-562-6905